## KELLY *et al.* *v.* LYNCH *et al.*

A PERSON not previously a party to a bill of exchange who, for a consideration, accepts the same, incurs thereby the liabilities of an acceptor equally as if he were the drawee.

Where one, not the drawee, accepted a draft for the sole purpose of protecting the interest of his foreign correspondent in a bill of lading accompanying the draft as collateral security, and took at the time an assignment of this bill of lading : *held*, that although the collateral security turned out to be of little value, its receipt was a legal consideration for the acceptance.

It is a sufficient consideration for the acceptance of a draft by one not a party to the paper, that the payee thereby loses the acceptance of the drawee.

Inducements, not amounting to fraud, held out by the payee of a draft to procure its acceptance, do not invalidate the contract of the acceptor.

APPEAL from the Twelfth Judicial District.

The facts are stated in the opinion.

*Sidney L. Johnson*, for Appellant.

I.   There was no consideration for the acceptance. The consignment was worth nothing, as it did not even pay the expenses upon it. The counsel for plaintiffs invokes the principles of the commercial law applicable to bills of exchange, which make payees, and indorsees for value, unaffected by the want of consideration between the drawer and drawee who has accepted, and cites *Reynolds* v. *Robinson*, (2 Adolp. & El., 196—42 E. C. L. R. 634.) We do not come within the principle of the case cited. We were not drawees, nor in any manner parties to the bill. There was no privity between us and Goldbaum. We did not accept for his honor, nor that of any party to the bill. There was no protest of the bill for non-acceptance, without which there could be no valid acceptance for honor.

II.   The plaintiffs, by their own acts, induced us to enter into this contract. To show how slightly may be the acts to which weight is given in the determination of such questions, we refer to the case of *Wilkinson* v. *Johnson* (3 Barn. & Cres., 428—10 E. C. L. R. 198.) Barron & Co., by coming to us in the way they did, placed us in such a situation that we were obliged to accept their offer or incur the risk of reproach from our correspondents.

That was a motive for our acceptance, but not a consideration. The only consideration was the cargo, which was supposed and assumed by both parties to be sufficient, and turned out, by no fault of ours, to be nothing. We insist that the plaintiffs and their agents, led us by their own acts into this acceptance under the erroneous belief, which they shared with us, that the cargo was ample to cover it, and that a better result might thus be secured for the second draft, with the collection of which also they, not we, were charged.

III. The plaintiffs and their agents, who were bound to dispose of the consignment, and apply the proceeds to the payment of the drafts, have made us, under the facts of the case, agents and trustees for that purpose, and are only entitled to recover what we received and tendered them, and that without costs. So far as the defendants were concerned there could, in no event, accrue to them any benefit from the consignment. They could dispose of it only so far as it was necessary to pay the drafts, in which they had no interest, and must turn over the balance to Goldbaum. They were mere trustees for the different parties, and accountable as such. Their motive for accepting the trust has been stated. Friendship, blood, business relations, are motives for undertaking such burdens, not considerations for pecuniary obligations. The knowledge of the existence of such a motive made the plaintiff's agents turn it to the account of their own convenience.

*C. Temple Emmet*, for Respondent.

I. It is not correct to say that there was no consideration. The plaintiffs paid to Goldbaum, the maker and indorser of this bill of exchange, the full value thereof. They have therefore paid a full consideration, and stand before the Court as innocent *bona fide* indorsees for value. But the defendants insist that in addition to paying the maker of the bill the full value, the plaintiffs must show that they have also paid the acceptors the full value. In other words, that to entitle a *bona fide* indorsee of a bill of exchange to recover against the acceptors, he must show that he has paid for the bill twice over.

The idea of an additional consideration between a *bona fide* indor-

see for value, and an acceptor, is surely a new doctrine in the law of bills of exchange. No such circumstance is essential to the liability of the acceptor, or occurs in fact upon acceptance. The acceptor must determine before making his acceptance how he stands with the maker, and what are his prospects for reimbursement. But having once accepted he cannot afterwards say to a *bona fide* indorsee for value, that he was mistaken in supposing that he would be protected, and therefore will not honor his acceptance. The case is precisely like that of *Robinson* v. *Reynolds* (2 Adolphus & Ellis, 196—42 Eng. Com. Law, 634). But in point of fact a full consideration did pass between the plaintiffs and defendants, viz. : the loss of Moore & Folger's acceptance, which they were ready to make, and upon which they would undoubtedly have been liable, whatever the condition of the cargo mentioned in the bill of lading.

It is hardly necessary to quote authorities to show that a consideration which consists in a loss or injury to one of the contracting parties is as valid and obligatory as would be one consisting in a gain or benefit to the other contracting party. (Chitty on Contracts, 31, and notes.)

II. The next ground of error alleged by the defendants is, that the plaintiffs, by their own acts, induced the defendants to enter into this contract. No representation was made or inducement held out. It was a matter of indifference to the plaintiff whether Moore & Folger took the consignment and accepted their draft, or whether the defendants did so ; and the offer of it to the latter was purely out of consideration for the defendants and their principals. The defendants' argument seems to be, that it was the duty of the plaintiffs or their agents " to put the defendants upon their guard to inspire a doubt or a mistrust of the transaction." But how was it possible for the plaintiffs to do this, when they themselves never dreamed that there was occasion for doubt or mistrust ? The defendants say that Barron & Co. placed them in such a situation that they were obliged to accept their offer or incur the risk of reproach from their principals. But the whole case shows, that it was a matter of indifference to Barron & Co. whether the defendants accepted the offer or not. It was made purely out of kindness

and consideration for the defendants and their principals, and the defendants were entirely at liberty to decline it. By accepting it, they have deprived the plaintiffs of Moore & Folger's acceptance.

III.   As to the defendants' third ground of error, viz.: that the plaintiffs and their agents were bound to receive and sell the consignments, and that in transferring it to the defendants they made the latter their agents and trustees, etc.

Not only was there no such obligation upon the plaintiffs or their agents, but it was never contemplated that they would do so.   The consignment was not made to them, nor did they have any interest in the matter beyond being repaid the money which they had advanced.

CROCKER, J. delivered the opinion of the Court—COPE, C. J. and NORTON, J. concurring.

The plaintiffs, who are merchants at Mazatlan, advanced a sum of money to one Goldbaum, on a draft and bill of lading, signed by the master of a vessel, representing a shipment by Goldbaum of eight hundred and ninety-six hides and a quantity of bones and horns, deliverable at San Francisco.   Goldbaum drew the draft for $2,100 on Moore & Folger, of San Francisco, payable at three days' sight, to the plaintiffs or order, and indorsed the bill of lading, directing the hides, etc., to be delivered to Moore & Folger upon payment of the draft.   Goldbaum being indebted to the house of Alsua, Dorn & Co., of Mazatlan, gave them also a draft on Moore & Folger for $1,000, payable to their order at three days' sight, and with plaintiffs' consent made another indorsement on the bill of lading, directing that " after payment of the above mentioned draft of $2,100," the draft for $1,000 was to be paid before the delivery of the contents of the bill of lading.   Alsua, Dorn & Co. indorsed their draft over to the plaintiffs, with instructions to pay the proceeds, when collected, to the defendants, who were their correspondents in San Francisco.   The plaintiffs then indorsed over both drafts for collection, and forwarded them, with the bill of lading, to Barron & Co., of San Francisco.   When the vessel arrived, Barron & Co. applied to Moore & Folger to accept the drafts and receive the consignment.   They were willing to receive the con-

Kelly *v*. Lynch.

signment, accept the draft for $2,100, and pay over the surplus on the draft for $1,000, but were not willing to accept the latter draft. Barron & Co. then went to the defendants, showed them the papers and the letter of Moore & Folger, and after some hesitation, they accepted the draft of $2,100 for the interest of their correspondents, Alsua, Dorn & Co., and not for the honor or on the credit of Goldbaum. Moore & Folger indorsed their refusal to accept on the drafts, and Barron & Co. indorsed and assigned the bill of lading and the draft for $1,000 to the defendants. When the hatches of the vessel were opened, it was discovered that there were only about thirty-one hides, and the balance of the cargo consisted of bones and horns, of no value—showing a gross fraud perpetrated by Goldbaum and the master of the vessel. The vessel and cargo were sold, and the net proceeds realized therefrom, which came to the hands of the defendants, was the sum of four hundred and sixty-six dollars and sixty-three cents, which they tendered to Barron & Co. for the plaintiffs, in payment of the draft, who refused to receive it. This action is brought against the defendants as acceptors, to recover the amount of the draft of $2,100 with interest and costs.

The Court below rendered judgment in favor of the plaintiffs, from which the defendants appeal.

The appellants contend that their acceptance was without consideration, and therefore they are not liable. In this we do not agree with them. By means of their acceptance they obtained the assignment and possession of the bill of lading, and the plaintiffs were also thereby induced to dispense with the acceptance of Moore & Folger, which would have been as beneficial to them as that of the defendants. Here is a benefit resulting to the defendants, and a loss sustained by the plaintiffs, either of which forms a sufficient consideration to support the promise. The fact that the bill of lading was not of as great value as was supposed affects the adequacy of the consideration, but not its sufficiency in point of law. It is not necessary that the consideration be adequate in value to support the contract. But the loss of the acceptance of Moore & Folger is not only a sufficient consideration, but one adequate in value.

43

These rules apply to cases where there is no admixture of fraud. In the present case, there is no pretense of any fraud on the part of the plaintiffs or their agents. The plaintiffs and the defendants, as well as their correspondents in Mazatlan and San Francisco, are all equally innocent parties. It is an unfortunate case for the defendants, but we see no just grounds for releasing them from their liability as acceptors of the draft.

The case of *Robinson* v. *Reynolds* (2 Adolphus & Ellis, N. S. 196) is fully in point. In that case Keegan obtained an advance from the National Bank of Ireland, upon a bill of lading, for butter purporting to have been shipped from Ireland to Liverpool, he giving to the bank his draft or bill of exchange for the amount of money advanced. The defendants, who were the drawees, accepted the bill, and received a transfer of the bill of lading from the bank. They soon ascertained that the bill of lading was a forgery, and then refusing to pay the draft, a suit was brought on their acceptance. The Court held that these facts constituted no defense to the action ; that the bank were the indorsees and indorsees for value, and the failure or want of consideration between them and the acceptors constituted no defense ; that the acceptance binds the defendants conclusively, as between them and every *bona fide* indorsee for value ; and that it did not matter whether the bill was accepted before or after such indorsement.

But the appellants contend that that case is not in point, because they are not the drawees or in any manner parties to the bill. We do not see that that fact affects the principle. They made themselves parties to the bill by accepting, and thereby assumed all the liabilities and responsibilities of acceptors. There is one point in the present case in which it differs from the one cited. Here, there was a consideration for the acceptance, as we have shown ; in that there was none, unless the transfer of a forged bill of lading could be considered one.

We see no ground for claiming that the plaintiffs by their acts induced the defendants to enter into the contract ; in the absence of fraud, that would not enable the defendants to avoid the contract. Nor is there any just ground for asserting that the plaintiffs made the defendants their agents and trustees, to dispose of the

consignment and apply the proceeds to the payment of the drafts. The liability of the defendants is as acceptors of the draft. We see no error in the action of the Court below.

The judgment is therefore affirmed.